In re PETTIBONE CORPORATION, a Delaware corporation, a/k/a Beardsley & Piper; Johnston & Jennings; Oceco; Pettibone Alabama; Pettibone Mercury; Barko Alabama; Barko Greenville; and f/k/a Magnum Industries; Pettibone Mulliken; Pettibone Georgia; Mercury Manufacturing; Pettibone Minnesota; Pettibone New York; Pettibone Wisconsin; Pettibone Westrac; National Iron Co.; Pettibone Compaction; Sure Seal Division, Debtor.

In re BARKO HYDRAULICS, INC., a Minnesota corporation, Debtor.

In re PETTIBONE MICHIGAN CORPORATION, a Michigan corporation, Debtor.

In re PETTIBONE INTERNATIONAL SALES CORPORATION, a Delaware corporation, Debtor.

In re PETTIBONE TIFFIN CORPORATION, an Ohio corporation, a/k/a and f/k/a Hanson Machinery Company, Debtor.

In re PETTIBONE OHIO CORPORATION, an Ohio corporation, a/k/a and f/k/a Cleveland Frog & Crossing Company, Debtor.

In re PETTIBONE CREDIT CORPORATION, a Delaware corporation, Debtor.

In re The UNIVERSAL ENGINEERING CORPORATION, an Ohio corporation, Debtor.

In re PETTIBONE TEXAS CORPORATION, a Texas corporation, Debtor.

In re HAMMERMILLS, INC., a Missouri corporation dissolved in June, 1984, Debtor.

Bankruptcy Nos. 86 B 1563 through 86 B 1572.

United States Bankruptcy Court, N.D. Illinois, E.D.

Oct. 23, 1990.

Kevin T. Keating, McDermott, Will & Emery, James L. Nachman, Winston & Strawn, Chicago, Ill., for debtor.

Alex W. Miller, Gessler, Flynn, Fleischmann, Hughes & Socol, Ltd., Chicago, Ill., for Rodney Hunt.

Andrew J. Maxwell, Maxwell and Perlstein, Chicago, Ill., for trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW FOLLOWING HEARING ON MOTION OF RODNEY HUNT FOR RECONSIDERATION OF ORDER DISALLOWING HIS CLAIM.

JACK B. SCHMETTERER, Bankruptcy Judge.

Following trial before the Court and considering the evidence and argument of counsel on the Motion of Rodney Hunt for reconsideration of the Order entered March 16, 1988 disallowing his claim, and for leave to file his late claim, the Court now makes and enters the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. On April 18, 1984, Rodney Hunt commenced a products liability action against Pettibone Corporation, filed in the state court in Harris County, Texas. The Com-

plaint alleged that Rodney Hunt was injured in an accident on April 22, 1982.

2. On January 31, 1986, the Pettibone entities filed voluntary petitions in Bankruptcy under Chapter 11 of the Bankruptcy Code in this Court. Those petitions have been jointly administered.

3. Claimant's attorneys, for purposes of his lawsuit against Pettibone, were Mr. John Forney and his law firm whose address stated in the Texas complaint was 3303 Main Street, Houston, Texas 77002.

4. On February 6, 1986 Mr. John Forney, Jr., as counsel for claimant Hunt, received a letter from Debtor's counsel Mr. Jeffrey W. Steidley stating that Pettibone had filed a voluntary Chapter 11 bankruptcy petition and that the pending products liability suit was stayed by the automatic stay in bankruptcy.

5. On February 21, 1986, Debtors' general counsel Mr. Douglas A. Johnson caused a copy of the Notice of Section 341 meeting and of the Automatic Stay in this case to be deposited in the U.S. mail addressed to:

John Forney, Esq.

Chris Dixie & Associates

3303 Main Street, Suite 333

Houston, TX

Mr. Forney's complete correct address on that date was:

Mr. John Forney, Jr.

Fickman, Van Os, Waterman, Dean & Moore, P.C.

3303 Main Street, Suite 333

Houston, Texas 77002

Nonetheless, Mr. Forney received the Notice of Meeting of Creditors and of Automatic Stay in February of 1986.

6. This Court ordered that October 31, 1986 was to be the last date by which creditors in this consolidated case could file claims and ordered that claims not filed by that date would be barred.

7. Rodney Hunt was not a scheduled creditor, and such, was required to file a timely Proof of Claim under Bankr. R. 3003(c)(2).

8. Claimant's counsel Forney was mailed written notice of the claims bar date by Pettibone's general counsel on September 8, 1986. Claimant's counsel Forney was mailed a second copy of the Notice of Bar Date on September 9, 1986 by Pettibone's general counsel. Both of these notices were addressed with proper postage to the same address as that used by Mr. Johnson on February 21, 1986.

9. Neither of the two Notices of Bar Date mailed to Mr. Forney by Pettibone's counsel were ever returned to Pettibone as undelivered. They were both received by Mr. Forney.

10. On September 25, 1986, Jeffrey W. Steidley, then counsel for Pettibone in the Texas suit, caused a copy of the Notice of Bar Date to be deposited in the mail with proper postage addressed to:

Mr. John Forney, Jr.

Attorney at Law

3303 Main Street, Suite 333

Houston, Texas 77002

As of September 23, 1986, Mr. Forney's new address was:

Mr. John Forney, Jr.

Waterman, Dean, Groth & Moore

2100 Travis Street, Suite 727

Houston, Texas 77002

11. Prior to September 23, 1986 a change of address and forwarding form indicating that the firm of Fickman, Van Os, Waterman, Dean & Moore, P.C. had changed offices to 2100 Travis Street, Suite 727, Houston, Texas 77002 was filed with the United States Post Office, Main Branch, Houston, Texas.

12. On September 26, 1986, the day after the September 25, 1986 mailing of the third Notice of Bar Date by Jeffrey Steidley, he received the Notice of Change of Address from Claimant's counsel Forney, which Mr. Forney had mailed on September 23, 1986.

13. Nonetheless, the September 25, 1986 mailing by Mr. Steidley was never returned as undelivered by the Post Office. Mr. Forney received the mailing by Mr. Steidley and thereby received a third copy of the Notice of Claim Bar Date. Accord-

ingly, the Claimant Rodney Hunt, through his attorney of record in the lawsuit, received notice of the Claims Bar Date twice by mid-September 1986, and a third time before the end of that month, thereby receiving notice earlier than the 23 days required by Bankruptcy Rules 2002(a)(8) and 9006(b) for notice of claims bar date when such notice is sent by mail.

14. Mr. John Forney asserts that a thorough system for recording incoming mail existed in his office during September of 1986 so as to ensure proper distribution of all mail received. However, Forney and Claimant failed to produce any of the mail logs he referred to in his Affidavits and in his deposition to support his contention that he never received any copies of Notice of Bar Date.

15. Mr. Forney's denials of receipt of the Bar Date Notice were considered by the Court. However, that denial lacked corroboration by production of the mail logs. Moreover, that denial was contradicted by evidence produced by Pettibone that none of the multiple notices were returned, by Mr. Forney's filing of change of address form with the Houston Post Office so as to get his mail at his new address, and by his receipt of a prior notice similarly addressed. The Court concludes that Mr. Forney received multiple copies of the Notice of Claims Bar Date prior to expiration of the bar date. However, he neither caused a timely claim to be filed herein by or on behalf of Mr. Hunt, nor did he employ other counsel to do so or to seek an extension of time to do so.

16. On January 13, 1988, Debtor's counsel caused a copy of Notice of Hearing and Motion of the Unsecured Creditors' Committee to Have Certain Claims be Deemed Disallowed to be deposited in the mail addressed to:

John Forney
Schwartz, Waterman, Fickman & Van Os, P.C.
No. 333
Houston, Texas 77002

His correct address at the time was:

Mr. John Forney, Jr.
Waterman, Dean, Groth & Moore, P.C.

3555 Timmons
Suite 1020
Houston, Texas 77027

17. The evidence does not show that Mr. Forney ever received in the mail that Notice of Hearing and Motion of the Unsecured Creditors' Committee to Have Certain Claims be Deemed Disallowed. Mr. Forney's denial of receipt of the latter notice of motion was corroborated by the improper and totally inadequate address used. The Court finds that Mr. Forney did not receive this notice of motion.

18. On consideration of the foregoing Motion by the Unsecured Creditors' Committee and understanding that all affected parties had been served proper notice of the motion, this Court entered an order on March 11, 1988 deeming certain claims disallowed, including that of the Claimant. That order was entered

"... without prejudice to any party who can demonstrate that they did not receive notice of the Bar Date or the Committee's Motion to Deem Certain Claims Disallowed to request reconsideration of this order, as it applies to said party, upon said demonstration."

19. This Court has in the hearing just completed reconsidered the Order of March 11, 1988, and has allowed Claimant to present evidence regarding his alleged nonreceipt of the Notice of the Bar Date as if the March 11, 1988 Order disallowing claims had not been entered against Mr. Forney. That is, the Court heard the matter as if Claimant's counsel had appeared on March 11, 1988 in opposition to the motion to disallow his claim as time barred, and had put on the same evidence of nonreceipt of the claim bar date notice that was presented at this hearing, though we must also consider the delay before the instant motion was filed.

20. The Court finds that Mr. Forney timely received several copies of the Notice of Claim Bar Date, but apparently did not realize the legal significance of that Notice. That is the reason that he took no action to file a claim or obtain counsel to do so or

obtain an extension of time to do so on behalf of Mr. Rodney Hunt.

21. On June 20, 1989, Mr. Forney learned from an attorney for Debtors about the Order of March 11, 1988. Forty-five days later on August 4, 1989, he wrote Debtors' counsel claiming that he had received neither Notice of the Claim Bar Date nor notice of motion seeking the Order of March 11, 1988. The instant motion was filed January 26, 1990; that was 175 days after his letter of August 4, 1989, and 220 days (over seven months) after he learned about the Order of March 11, 1988.

22. The remarks of the Court on September 6, 1990 at the close of the hearing will stand as additional Findings of Fact. Statements of fact set forth in the Conclusions of Law will also stand as additional Findings of Fact.

### CONCLUSIONS OF LAW

1. Subject matter jurisdiction over this matter exists under 28 U.S.C. § 1334(b). This is a core proceeding within 28 U.S.C. § 157(b)(2)(B) (allowance and disallowance of claims).

2. Bankruptcy Rule 3003(c)(3) authorizes the bankruptcy court to fix a bar date beyond which proofs of claim are disallowed. A creditor is entitled to at least 23 days notice of the claims bar date when such notice is mailed. Bankr.R. 2002(a)(8) and 9006(f), 11 U.S.C. *In re Robintech, Inc.,* 69 B.R. 663, 666 (Bankr.N.D.Tex. 1987). The Bankruptcy Court also has the power under the same rule to extend the date "for cause shown." Bankr.R. 3003(c)(3), and to reconsider an order deeming claims disallowed under rule 3008 upon motion of any interested party. The one year time limitation of federal rule 60(b) does not apply to Motions for Reconsideration. Bankr.R. 9024.

*Standards for Applying Rule 3003(c)(3)*

■ 3. A bar date in a reorganization case provides a mechanism by which a trustee in bankruptcy can estimate the potential liabilities of the debtor. *In re Chicago, Rock Island & Pacific Railroad Co.,* 788 F.2d 1280, 1281 (7th Cir.1986). This estimate is essential to formulating a viable plan of reorganization. Id. *See also In re Arrow Air, Inc.,* 75 B.R. 375, 378 (Bankr.S. D.Fla.1987) ("an essential purpose of setting a claims deadline ... is to fully inform participants in the reorganization process as to the debtor's liabilities" so that "(a)rmed with this knowledge, proposals may be evaluated with confidence, and negotiations may proceed without being hindered by undue caution or skepticism...."). In this case, the Debtors were in fact aided in their reorganization efforts by knowing the total claims against them, as were the creditors in voting on the Plan. Debtors' Plan was confirmed and Debtors were successfully reorganized long before claimant here sought to file a late claim.

■ 4. In evaluating whether a late claim should be permitted under Rule 3003(c)(3), Bankruptcy Judges in this jurisdiction, as well as other jurisdictions, have considered the following factors: (i) the reason for the delay; (ii) the length of the delay; (iii) whether the debtor was prejudiced by the delay; (iv) the debtor's knowledge of the claim; and (v) the good faith of the creditor. *In re Jartran, Inc.,* 76 B.R. 123, 126 (Bankr.N.D.Ill.1987); *In re Lester Witte & Co.,* 52 B.R. 436, 438 (Bankr.N.D. Ill.1984). *See also Collier* ¶ 3003.05[4] at 3003–12 (also discussing the propriety of penalizing a client for attorney error).

5. When construing the phrase "for cause" in the context of determining whether claims filed after the bar date should be allowed, some courts in other jurisdictions have found that Rule 3003(c)(3) must be read in conjunction with Bankruptcy Rule 9006(b). *See, e.g., In re Vertientes, Ltd.,* 845 F.2d 57, 59 (3rd Cir. 1988); *In re South Atlantic Financial Corp.,* 767 F.2d 814, 817 (11th Cir.1985), *cert. denied,* 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986). *Cf., Maressa v. A.H. Robins Co., Inc.,* 839 F.2d 220, 221 (4th Cir.1988), *cert. denied,* 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 53 (1988) [suggesting that Fed.R.Civ.P. 60(b)(1) should be applied to determine if an untimely filing should be permitted. Rule 9006(b) provides in part that "when an act is required ...

within a specified period ..., the court for cause shown may at any time in its discretion ... (2) on motion made after expiration of the specified period permit the act to be done *where the failure to act was the result of excusable neglect."* (emphasis added)]. In *South Atlantic,* the Eleventh Circuit explained that "[c]ourts have been most willing to find excusable neglect where the movant failed to comply with the bar date because, through no fault of its own, it had no notice of that date." 767 F.2d at 817–18 (citations omitted). *See also Arrow,* 75 B.R. at 377 (citing *South Atlantic,* for the proposition that excusable neglect "means the failure to act was due *solely* to matters beyond the movant's control.") (emphasis added); *In re Figueroa,* 33 B.R. 298, 302 (Bankr.S.D.N.Y.1983) ("excusable neglect" in Bankruptcy Rule 9006(b)(1) requires the moving party to show that the failure to comply with the deadline "was due to something more than ordinary negligence; it must have been something that would not have been prevented by diligence.").

6. The significance of incorporating Rule 9006 into the Rule 3003(c)(3) analysis is its impact on the weight, if any, to be given to "prejudice" as a factor to consider in assessing whether a late claim should be permitted. In *South Atlantic,* the Eleventh Circuit noted that Federal Rule of Civil Procedure 6(b)(2) also uses the term "excusable neglect" and then relied on precedent construing that rule to support its reading of Bankruptcy Rule 9006(b)(1):

> Both [Bankruptcy Rule 9006(b) and Federal Rule of Civil Procedure 6(b)(2)] extend the time for the doing of an act where "the failure to act was the result of excusable neglect." *It is clear from this language that the focus of these rules is on the movant's actions and the reasons for those actions, not on the effect that an extension might have on the other parties' positions.*

767 F.2d at 818–19 (emphasis added). Accordingly, the Eleventh Circuit asserted that the prejudice to the debtor, its shareholders or its creditors "was not ... a relevant inquiry." The Eleventh Circuit cited two cases where prejudice was considered, but did not otherwise address the numerous courts that have followed the multi-factor approach used in this district.

■ 7. Other courts have explicitly rejected this approach. *See, e.g., In re Terex Corp.,* 45 B.R. 290 (Bankr.N.D.Ohio 1985), and cases cited therein. The *Terex* court explained:

> Rule 3003 deals specifically with the filing of proofs of claim in a Chapter 11 case. Rule 9006 deals with the computation of time within which an act must be performed in a general fashion. The general rule must yield to the specific; otherwise Rule 3003(c)(3) would become a nullity. *Terex,* 45 B.R. at 292.

One commentator suggests that the considerations under Rule 3003(c)(3) include excusable neglect but are broader, stating that "the standard to be applied by the court is not simply the standard of excusable neglect." *Colliers on Bankruptcy* ¶ 3003.05[4] at 3003–11 (15th ed. 1989). *See also In re Herd,* 840 F.2d 757, 758, n. 2 (10th Cir.1988) (noting the conflict between the two positions). This court agrees with the multi-factor test previously used by other Bankruptcy Judges in this district, and the reasoning in those cases, under which "prejudice" is one of the factors to be considered in the analysis.

*Service of Notice of Claims Bar Date*

8. Service of process of any paper or notice by mail is complete upon mailing. *See* Rule 9006(e); *In re Longardner & Assoc.,* 855 F.2d 455, 459 (7th Cir.1988), *cert. denied,* 489 U.S. 1015, 109 S.Ct. 1130, 103 L.Ed.2d 191 (1989), citing *Hagner v. United States,* 285 U.S. 427, 430, 52 S.Ct. 417, 418, 76 L.Ed. 861 (1932); *In re Nimz Transp. Inc.,* 505 F.2d 177, 179 (7th Cir. 1974); *In re Moseley,* 74 B.R. 791, 802 (Bankr.C.D.Cal.1987), *appeal dismissed,* 101 B.R. 608 (Bankr. 9th Cir.1989).

9. The Notices sent by Pettibone on September 8th, 9th, and 25th of 1986 were reasonably calculated to reach the interested party. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 318, 70 S.Ct. 652, 659, 94 L.Ed. 865 (1950).

■ 10. Deficient notice of the bar date may be sufficient cause to extend the deadline for filing proof of claim where the deficiency resulted in the notice not being received in time. *In re Robintech, Inc.*, 69 B.R. 663 (Bankr.N.D.Tex.1987).

11. Claimant, Rodney Hunt, a known creditor, was entitled to actual notice of the bar date for filing a proof of claim. *See In re Chicago Pacific Corp.*, 773 F.2d 909, 917 (7th Cir.1985).

■ 12. Where debtor establishes that notice was properly addressed and deposited in the mail with sufficient postage, then a rebuttable presumption is raised that the notice was received. *In re Nimz Transportation, Inc.*, 505 F.2d 177, 179 (7th Cir.1974). However, where notice is improperly addressed the presumption cannot be raised, and where the address is only slightly incorrect the presumption remains, but is weakened. *In re Robintech, Inc.*, 69 B.R. at 665.

■ 13. It is the claimant's responsibility to rebut the presumption of receipt of Notice of the Bar Date. *In re Longardner & Assoc.*, 855 F.2d 455, 459 (7th Cir.1988), *cert. denied*, 489 U.S. 1015, 109 S.Ct. 1130, 103 L.Ed.2d 191 (1989), citing *Hagner v. United States*, 285 U.S. 427, 430, 52 S.Ct. 417, 418, 76 L.Ed. 861 (1932); *In re Nimz Transp., Inc.*, 505 F.2d 177, 179 (7th Cir. 1974); *In re Moseley*, 74 B.R. 791, 802 (Bankr.C.D.Cal.1987), *appeal dismissed*, 101 B.R. 608 (9th Cir.BAP 1989).

■ 14. Mailing of copies of the Notice of Bar Date resulted in a weakened presumption of receipt because the addresses in both of those Notices were partly incomplete in that they lack the correct law firm name and a zip code. *In re Robintech, Inc.*, 69 B.R. 663 (Bankr.N.D.Tex.1987). However, here that weakened presumption was not rebutted. Moreover, the evidence clearly showed that those Notices were timely received by Mr. Forney.

■ 15. A presumption of receipt does not arise regarding the Notice of Hearing and Motion of the Unsecured Creditors' Committee to Have Certain Claims Deemed Disallowed; that Notice was improperly addressed as it lacked a street name and number. *In re Robintech, Inc.*, 69 B.R. 663, 665 (Bankr.N.D.Tex.1987).

■ 16. Denial by addressee of receipt of mail does not rebut the presumption of receipt but merely raises a question of fact. *In re Robintech, Inc.*, 863 F.2d 393, 396 (5th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 55, 107 L.Ed.2d 24 (1989). While Mr. Forney denies receipt of any copies of the Notice of Bar Date, his failure to produce the mail logs, Pettibone's proof that none of the three copies of Notice of Bar Date were ever returned, and proof that an earlier notice to Forney addressed similarly reached him, shows that the presumption of receipt has not been rebutted and affirmatively proves receipt of the three copies of that Notice.

■ 17. An incomplete address on Notice of Bar Date does not excuse late filing where there is no proof that improper address caused a delay in receipt of Notice of Bar Date. *In re Robintech, Inc.*, 863 F.2d 393, 396 (5th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 55, 107 L.Ed.2d 24 (1989). The address to which the Notice of Bar Date was thrice sent lacked only a zip code and proper name of law firm. The fact that Mr. Forney received the Notice of Automatic Stay and of Creditor's Meeting, which was mailed to the same address as the Notice of Bar Date, the proof that the several copies of Notice of Bar Date were not returned, and other evidence discussed all show that the lack of zip code and lack of correct firm name did not cause a delay in receipt of Notice of the Bar Date.

18. Pursuant to the Order Deeming Certain Claims Disallowed, this Court undertook to reconsider that Order as to any claimant unless claimant received the Notice of the Bar Date and the Committee's Motion to Deem Certain Claims Disallowed. Because it was not shown that Claimant or his counsel received Notice of the latter Motion, that Order has been reconsidered as if Claimant's grounds for filing late claim were presented on March 11, 1988, when claimant's claim, along with claims of others, was disallowed. Further, the Court

must consider the delay by Movant through his counsel of over seven months in presenting the instant motion after his Texas counsel learned of the Order barring his claim.

19. A creditor's claim can be barred for untimeliness. Such a barring occurs after the creditor has received reasonable notice. Reasonable notice is that which is reasonably calculated to reach all interested parties, reasonably conveys all of the required information, and permits a reasonable amount of time for response. *Mullane v. Central Hanover Bank & Trust Company*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

20. As to notice, "(t)he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane v. Central Hanover Bank & Trust Company*, 339 U.S. 306, 315, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

21. The law establishes a system of notices and procedures by which potential claimants are to file timely Proofs of Claims so as to enable the reorganization process to proceed. *See In re Pettibone Corporation*, 110 B.R. 837, 842–43 (Bankr. N.D.Ill.1990) (Schmetterer, J.). Claimant through his counsel failed to recognize the significance of the bar date and, thus he did not abide by the requirement of law to file a valid and timely Proof of Claim.

22. In evaluating whether a late claimant shows cause for extending the bar date under Rule 3003(c)(3), bankruptcy courts have used a five-factor test, an excusable neglect standard or both in conjunction. *In re Jartran, Inc.*, 76 B.R. 123, 126 (Bankr.N.D.Ill.1987).

23. The five factors that courts look to have often included: (i) the reason for the delay; (ii) the length of the delay; (iii) whether the debtor was prejudiced by the delay; (iv) the debtor's knowledge of the claim; and (v) the creditor's good faith. *In re Jartran, Inc.*, 76 B.R. 123, 126 (Bankr. N.D.Ill.1987); *In re Lester Witte & Co.*, 52 B.R. 436, 438 (Bankr.N.D.Ill.1984).

24. The reason for delay in filing Claimant's Proof of Claim from the bar date set on October 31, 1986 until the Order barring his claim was entered on March 11, 1988 was the failure of Claimant's counsel to recognize the significance of the several copies of Claim Bar Date Notice that he received. The length of his delays in seeking to file the Proof of Claim during that period, and again from June 20, 1989 when he learned of the Order barring Mr. Hunt's claim until January 26, 1990 when the instant motion was filed, is extraordinary. Those long years of delay in filing a claim in Bankruptcy in the face of clear notice of claims bar date, and delay in doing so until long after the Debtor's Plan was confirmed, are indicia of bad faith. While the Debtor had knowledge of the claim, via the previously filed lawsuit, and Debtor has not shown prejudice by reason of the delay, the lack of any reason for claimant's delays and the great length of those delays until long after confirmation preclude allowing this claim to proceed. The Texas bankruptcy judge in *In re Robintech, Inc.*, 69 B.R. 663 at 666 (Bankr.N.D.Tex.1987) noted that the "equities in this case are difficult to balance" in allowing a claim filed only two days late. Given the delay here and blatant disregard of the claims bar date, this Court has no such difficulty. The injury bar must observe claims bar dates in bankruptcy. Otherwise, they risk disaster for their clients and, in consequence, for themselves as their client becomes their creditor.

## CONCLUSION

Based on the foregoing, Mr. Hunt's Motion will by separate order be denied this date.